UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                v.

SHU JUN ZHEN,
a/k/a "Yan Feng Chen,"
a/k/a "Chunyan Li,"

JIANFEI LU,
a/k/a "Xian Le Li,"

MAOUXUAN XIA,
a/k/a "Xin Lin"
a/k/a "Xiang Lin,"
a/k/a "Zhiyue Qin,"

                              Defendants.
-----------------------------------------------------------------------x

**OPINION & ORDER**

24-MJ-305
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On April 19, 2024, Defendants were arraigned on a removal complaint to the Western District of North Carolina. Detention hearings for all Defendants were held on the same day; the Court denied bail and committed each Defendant to the Western District of North Carolina. *See* Dkt. Nos. 4, 5, 6. This action is currently closed.

On April 28, 2024, Defendant Shu Jun Zhen, also known as "Yan Feng Chen" and "Chunyan Li" (hereinafter, "Zhen"), filed a motion for reconsideration of denial of bond, styled as an "emergency motion for bond reconsideration." Dkt. No. 26 ("Zhen's Motion"). On April 29, 2024, Defendant Jianfei Lu, also known as "Xian Le Li" (hereinafter, "Lu"), filed a motion for reconsideration of denial of bond. Dkt. No. 27 ("Lu's Motion").

For the reasons discussed below, the Court **denies** Zhen's Motion and Lu's Motion.

1

I.      **Relevant Background**

On March 20, 2024, a federal grand jury sitting in the Western District of North Carolina returned a sealed indictment against Zhen and Lu, among others, with violating 18 U.S.C. §§ 1956(h), 1956(a)(1)(B)(i), and 1957(a) (money laundering). *See generally*, Indictment, *United States v. Enhua Fang, et. al.*, 3:24-CR-64 (FDW) (W.D.N.C. Mar. 20, 2024); Dkt. No. 1, at 6-14. On March 20, 2024, the United States District Court for the Western District of North Carolina issued sealed arrest warrants for Zhen and Lu. *See* Dkt. No. 1, at 16-17. On or about April 18, 2024, law enforcement arrested Zhen and Lu. *See id.* at 2.

On April 19, 2024, in anticipation of Zhen and Lu's initial appearance and application for bail, the Government filed letters arguing that Zhen and Lu are serious risks of flight and therefore, that the Court should enter permanent orders of protection. *See* Dkt. Nos. 17, 18.

In support of the Government's application for a permanent order of detention against Zhen, the Government argued that the indictment stems from a "long-term and multi-agency investigation" into a "sprawling Chinese money laundering organization with operatives in the United States, Mexico, China, and elsewhere." Dkt. No. 18, at 1-2. Zhen (and her co-defendants) were purportedly members of that organization and provided "critical money laundering services" to drug traffickers located throughout the United States. *Id.* at 2. The Government proffered[1] that Zhen "made deposits totaling at least $7,315,809 using her real name, approximately $3,714,462 using the name "Yan Feng Chen," and approximately $12,129,267 using another false identity in the name of "Chunyan Li." *Id.* at 3. Born in China but currently a naturalized citizen of the United States, the Government represented that Zhen has "extensive and recent travel history" to and from China. *Id.* at 3. The Government noted that China, Zhen's home country, has no extradition treaty

---

[1] "[T]he government may proceed by proffer" in detention hearings. *See United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) ("The rules of evidence do not apply in a detention hearing.").

2

with the United States. *Id.* The Government added that it was not aware of any contacts that Zhen maintains in the Western District of North Carolina. *Id.* at 3-4.

In its letter, the Government also addressed the four factors the Court must consider in deciding an application for bail pursuant to the Bail Reform Act, namely: "(1) the nature and circumstances of the offenses charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." *United States v. Fishenko*, No. 12-CR-626 (SJ), 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013), *aff'd* (2d. Cir. Sept. 23, 2013). The Government argued that (1) the charged crimes are serious—where Zhen, if convicted, faces a United States Sentencing Guidelines range of 108 to 135 months; (2) the evidence against Zhen is strong, increasing her incentive to flee; (3) Zhen's past use of "multiple false identities" to conceal the scope of the purported money laundering activities makes her a "serious flight risk"; and (4) Zhen is a danger to the community based on the conduct charged—especially as certain victims and witnesses are identifiable, raising concerns for their personal safety. Dkt. No. 18, at 4-5.

Similarly, in support of the Government's application for a permanent order of detention against Lu, the Government asserted many of the same underlying arguments as in their motion with co-defendant Zhen. *See* Dkt. No. 17. The Government proffered that Lu made deposits totaling $20,430,368 as part of the conspiracy from April 22, 2022 to December 2023, including having made "deposits totaling at least $4,663,031 during the course of the investigation using the name 'Xian Le Li.'" *Id.* at 2. The Government again noted that China, Lu's home country, has no extradition treaty with the United States. *Id.* at 4. The Government also added that it was not aware of any contacts that Lu maintains in the Western District of North Carolina. *Id.* at 3.

3

Zhen and Lu appeared before the undersigned on April 19, 2024 pursuant to Fed. R. Crim. P. 5(c)(3). *See* Minute Entry dated April 19, 2024. For the reasons stated on the record, the Court denied bail for both Zhen and Lu and ordered each defendant detained, as the Court determined that the Government met its burden of showing that detention is required for Zhen and Lu based on risk of flight. *See id*. The Court committed Zhen and Lu to the Western District of North Carolina and commanded the United States Marshal to "take custody of [Zhen and Lu] and to transport [Zhen and Lu] with a certified copy of this commitment forthwith to the district of offense as specified [] and there deliver [Zhen and Lu] to the United States Marshal for that District or to some other officer authorized to receive [Zhen and Lu]." Dkt. Nos. 4, 5.

On April 29, 2024, Zhen filed a Request for Reconsideration of Denial of Bond, styled as an "Emergency MOTION for Bond Reconsideration." Dkt. No. 26. Requesting that this Court reconsider the previous bond application, Zhen requests that this Court should consider that Zhen is: (1) a United States citizen, (2) divorced, and (3) a mother of "three United States Citizen children who reside in Staten Island"—all between eleven and fourteen years of age. *Id.* at 1-2. Zhen also asserts that her mother is the owner of real property located in Staten Island, New York and "worth $915,000,"—the latter which the mother is willing to "post" as security. *Id.* at 2. Additionally, Zhen's ex-husband has offered to sign as a guarantor. *Id.* The Defendant is seeking bail "and other security measures which shall ensure that she will appear in Court[.]" *Id*.

Additionally, on April 29, 2024, Lu filed a Request for Reconsideration of Denial of Bond. Lu argues—as he did at the detention hearing—that he has a pending I-485 application for United States permanent residence. *See* Dkt. No. 27 at 1. Lu argues that he filed taxes for the past three years. *See id.* Lu adds that he has two friends, "Zhang, Jie and Chen, Hongxin" who will also sign as guarantors. *See id.*

4

On April 30, 2024, the Government filed a letter in opposition to Zhen's Motion. Dkt. No. 28.

## II. Legal Standards

The Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.* (the "Act"), prescribes the statutory standards for determining whether a criminal defendant should be detained or released pending trial. Pursuant to the Act, the Court "shall order the pretrial release of [a defendant] on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court […], unless the judicial officer determines that such release (1) will not reasonably assure the appearance of the person as required or (2) will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

Release may be denied only if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see United States v. Baig*, 536 F. App'x 91, 92 (2d Cir. 2013) (quoting the Act).

With respect to risk of flight, "the Government must prove by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight, and that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Baig*, 536 F. App'x at 92 (quoting *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007)); *see also United States v. Wang*, No. 23-CR-118-3 (AT), 2023 WL 3033729, at *5 (S.D.N.Y. Apr. 21, 2023), *aff'd*, 2023 WL 4551637 (S.D.N.Y. July 14, 2023). A finding of dangerousness must be supported by clear and convincing evidence. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995).

>Title 18, Section 3142(f)(2) provides that a detention hearing:
>
>may be reopened, before or after a determination by a judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2).

Under the Act, a court may revisit its initial determination ordering pretrial detention and "reopen the bail hearing if information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether pretrial detention is warranted." *United States v. Zhang*, No. 22-CR-208-4 (CBA), 2022 WL 17420740, at *1 (E.D.N.Y. Aug. 3, 2022), *aff'd*, 55 F.4th 141 (2d Cir. 2022) (citing 18 U.S.C. § 3142(f)). "The Court is not required to do so if it determines that any new information would not have a material bearing on the issue." *Id*. "The Court can also revisit its own bail decisions as an exercise of its inherent authority, even if the defendant's proffered new evidence does not meet the statutory standard for reopening the decision." *United States v. Kwok*, No. 23-CR-118-1 (AT), 2024 WL 54170, at *2 (S.D.N.Y. Jan. 4, 2024).

**III.   Discussion**

Although Zhen and Lu's motions are styled as motions to reconsider, 18 U.S.C. § 3142(f)(2) governs the Court's ability to reconsider—or "reopen"—a detention order absent an appeal. The Court is not required to reconsider a detention order "if it determines that any new information would not have a material bearing on the issue." *Zhang*, 2022 WL 17420740, at *1.

Under the standard set forth above, no such new, material information was presented in either Zhen or Lu's motions. The Government recognizes that Zhen's motion "does add two minor children of Zhen who were not listed in the pretrial report and replaces Jin Lu Chen with Liang P. Zhen as a potential guarantor for the defendant." Dkt. No. 28 at 1-2. But Zhen "provides no

6

information about Liang P. Zhen other than his name and the fact he is the ex-husband of the defendant." *Id.* Similarly, the names of Zhen's proposed guarantors may have changed, but there is no indication that this change would have a material bearing on the detention.

Indeed, the original reasons stated for detention had nothing to do with the identities of the potential guarantors. Instead, the reasons for detention focused on other factors, such as the seriousness of the crimes charged; the strong evidence against Zhen and Lu; and Zhen and Lu's past use of false identities to conceal the scope of the purported money laundering activities. *See United States v. Raniere*, No. 18-CR-2041 (NGG) (VMS), 2018 WL 6344202, at *2 n.7 (E.D.N.Y. Dec. 5, 2018) (noting that "[a]s the court has already held one detention hearing, it need not hold another").

And even if this Court were to reopen the bail hearing under its "inherent power[ ] to review its own bail decisions," *United States v. Maxwell*, 527 F. Supp. 3d 659, 662 (S.D.N.Y. 2021), this Court's view on the imposition of bail has not changed, despite any new arguments made or additional conditions proposed in the Defendants' renewed applications. Under 18 U.S.C. § 3142(e)(1), the Court must order Defendants' pretrial detention if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."

Here, the Government has met its burden of showing, by a preponderance of the evidence, that Zhen and Lu are risks of flight. As discussed above, the possibility of a severe sentence here increases Zhen and Lu's likelihood of flight. *See United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987). Additionally, the evidence of the Defendants' guilt is strong, providing "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993). As argued by the Government at the detention hearing, and as shown in the Government's submissions and the

7

Indictment, Zhen and Lu are alleged to have provided critical money laundering services to various drug trafficking organizations throughout the United States. *See* Dkt. No. 18 at 1-2. The Government points to extensive financial, flight, surveillance, and bank records in support of their assertions, as well as photographic evidence of Zhen and Lu's use of fraudulent identities. *See* Dkt. Nos. 17-18.

Further, given the transnational elements of the money laundering operation at issue, as well as the millions of dollars that is alleged to have been laundered, the Government has met its burden of showing that Zhen and Lu may seek to flee from the United States—and perhaps to a country, such as China, that has no extradition with the United States. Dkt. No. 17 at 4: Dkt. No. 18 at 4-5; *see, e.g., United States v. Boustani*, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019), *aff'd*, No. 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019) ("[T]he combination of Defendant's alleged deceptive actions, access to substantial financial resources, frequent international travel, complete lack of ties to the United States, and extensive ties to foreign countries without extradition demonstrates Defendant poses a serious risk of flight."); *United States v. Zarrab*, 15-CR-867, 2016 WL 3681423, at *8 (S.D.N.Y. July 16, 2016) ("Defendant's lack of ties to the United States; his significant wealth and his substantial resources; his extensive international travel; and his strong ties to foreign countries, including countries without extradition . . . among others stated, provide [the defendant] with the incentive and the wherewithal to flee and render him a flight risk."); *United States v. Epstein*, 155 F. Supp. 2d 323, 326 (E.D. Pa. 2001) (Bartle, J.) ("The crucial factor, however, is defendant's lack of ties to the United States and his extensive ties to Brazil with which no extradition treaty exists. In our view, his forfeiture of $ 1 million worth of assets in the United States would not deter him from flight when in Brazil he has significant wealth, a lucrative job, the presence of his family, and insulation from ever being forced to stand trial."). Moreover, while

Zhen and Lu offered to present their passports to the Court, the Court is not inclined to ignore that Zhen and Lu—each of whom is alleged to have masked their identities on other occasions—may seek alternative methods to flee the United States.

At bottom, there is no basis to reopen Zhen and Lu's detention hearings in the Eastern District of New York because the purportedly new information would not have changed the Court's decision to enter permanent orders of detention against Zhen and Lu.

## IV. Conclusion

Therefore, for the foregoing reasons and for the reasons stated at the April 19, 2024 detention hearings, the Court finds that Zhen and Lu are flight risks and that no combination of conditions can secure their appearance at trial. Accordingly, Zhen's Motion and Lu's Motion are **DENIED**.

The United States Marshals are ordered to transport Zhen and Lu to the Western District of North Carolina by May 3, 2024. This action in the Eastern District of New York remains closed.

Dated: Brooklyn, New York
April 30, 2024

**SO ORDERED**.

_s/ Joseph A. Marutollo_
JOSEPH A. MARUTOLLO
United States Magistrate Judge